UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

CIVIL ACTION NO. 05-62-JBC

COLIN SPICER,                                                                                          PLAINTIFF,

V.                              MEMORANDUM OPINION AND ORDER

JO ANNE BARNHART, COMMISSIONER,
SOCIAL SECURITY ADMINISTRATION,                                                DEFENDANT.

\* \* \* \* \* \* \* \* \* \* \*

The plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security denying the plaintiff's application for Disability Insurance Benefits. Upon cross-motions for summary judgment (DE 8, DE 11), the court referred this action to United States Magistrate Judge James B. Todd, who issued the Proposed Findings of Fact and Recommendation (DE 13). The plaintiff has filed objections to the Report and Recommendation (DE 14).

When the parties to an action submit objections to the Magistrate Judge's Report, the district court reviews the record *de novo*. 28 U.S.C. § 636 (b)(1)(C).

The court, having reviewed the record in light of the plaintiff's objections and being otherwise sufficiently advised, will adopt the Magistrate Judge's Report and Recommendation and affirm the Commissioner's decision.

**Background**

The plaintiff was involved in a head-on motor vehicle collision on October 4, 2002. His injuries included a compound fracture of his left foot and a pelvic

fracture, and treatment required multiple surgeries.  Since then, his left foot continues to swell, he experiences pain when he stands, and he walks with the assistance of a cane.  He has also dealt with depression and anxiety after the accident.

Dr. Eden Villa, the plaintiff's treating physician, diagnosed the plaintiff with anxiety and depression for which he prescribed Elavil.  AR 181, 182, 185.  On January 13, 2003, Dr. Villa found that the incision in the plaintiff's left hip was healing well.  AR 181.  Dr. Villa also prescribed Xanax and Remeron for the plaintiff's insomnia and Lortab for pain.  AR 181, 182.  Dr. Tariq Nazir replaced Dr. Villa as the plaintiff's primary care physician.  *See* AR 245.  In a letter dated July 21, 2003, Dr. Nazir wrote that "[i]n view of his injuries, surgery and limitation of physical activity after the surgery It is my opinion he may not be able to go back to a gainful employment part time or Full time."  AR 205.

A hearing was held on September 9, 2003, at which time the Administrative Law Judge ("ALJ") questioned the plaintiff about his work history, his injuries, and his daily activities.  The proceeding was continued so that a consultative examination could be performed.

Dr. Jeffrey G. Ellington performed a consultative examination on January 3, 2004.  Dr. Ellington reported that the plaintiff "had no apparent difficulty moving around the examination room and getting on and off the examination table," no problems dressing and undressing, and no muscular atrophy.  AR 211.  Dr. Ellington observed that the plaintiff's range of motion about his left hip and ankle

2

was decreased. *Id.* Although there did not appear to be any pain associated with active movement of his ankle and hip, Dr. Ellington did note that passive movement of those joints caused pain. *Id.* The plaintiff could not toe-walk, but he could heel-walk without difficulty. AR 212. The plaintiff also had some decreased strength in his left leg. *Id.*

Dr. Ellington recommended that the plaintiff continue seeking care for his left foot and hip and follow any therapies prescribed. *Id.* In summary, Dr. Ellington found that the plaintiff's ability to stand, walk, push and pull, climb, kneel, crouch, crawl, and stoop are mildly restricted and that he is moderately restricted in his ability to lift and carry. *Id.* Specifically, the claimant could stand or walk about 6 hours per day, occasionally lift/carry up to 25 pounds, frequently lift/carry no more than 20 pounds, and only occasionally climb, kneel, crouch, crawl, or stoop. AR 216-17. His capacity for pushing and pulling was limited by the decreased range of motion and strength in his left leg. AR 217. Dr. Ellington found no restriction on the plaintiff's ability to sit, balance, reach, handle, finger, feel, see, hear, or speak. AR 212. Finally, "[t]here was no evidence for need for assistive device for ambulation." AR 212-13.

A second hearing was conducted on July 9, 2004, following Dr. Ellington's examination. A Vocational Expert ("VE"), Dr. Ralph Crystal, testified at the hearing. The ALJ described to Dr. Crystal a hypothetical individual with the plaintiff's age and education who could occasionally lift 25 pounds and frequently lift 20 pounds, walk 2 hours per day, sit and stand 6 hours per day, has limited ability to push and

pull with his lower extremities, can occasionally climb ramps and stairs, and is able to occasionally balance, stoop, kneel, crouch, and crawl. AR 263-64. Dr. Crystal testified that an individual with those restrictions could perform counter clerk jobs. AR 264. In a second question, the ALJ further restricted the hypothetical individual to standing only 2 hours per day, no crawling, no whole body vibration, and no hazardous machinery at dangerous heights. AR 265. The VE testified that such an individual could still perform counter clerk, sales, and cashier jobs with a sit/stand option, reducing the numbers cited in his first answer by approximately 30 percent. AR 265-66. Dr. Crystal stated that the individual described in the second hypothetical could also perform several types of bench and assembly jobs. Finally, the ALJ posed a third hypothetical question with the same physical restrictions as the second, but with the added inability to deal with work stresses, maintain attention and concentration, and be reliable due to his extreme pain. AR 267. Dr. Crystal opined that

> this person would be varying between seriously limited but not precluded function and no useful function. And I would say that that with those variations, that such a person would be unable to complete a typical 8-hour workday, 40-hour workweek on a sustained basis. So there would be no jobs you -- the past work, the jobs noted, and no other work that could be performed.

*Id.*

Dr. James W. Templin examined the plaintiff on November 12, 2004, after the ALJ's opinion had been issued. The claimant told Dr. Templin that he experienced persistent and severe pain in his left foot as well as persistent chronic

4

pain in his lower back, left hip, and left leg.  AR 224.  He stated that the pain worsened with extended periods of standing, walking, bending, stooping, kneeling, crouching, lifting, carrying, climbing, or repeated use of foot controls.  *Id.*  Dr. Templin noted a decreased range of motion in the plaintiff's left hip and that passive extension and abduction of the left hip increased the plaintiff's back pain.  AR 225.  Dr. Templin classified the claimant's back, left hip, left foot, and left leg pain as moderate.  AR 228.  Dr. Templin restricted the plaintiff to only occasionally lifting/carrying 25 pounds from waist level and 10 to 15 pounds from the floor; limited him to standing or walking 1.5 hours per day, with a maximum of 15 to 20 minutes continuously; and restricted sitting to 4 hours per day, with a maximum of 1 hour continuously.  AR 228-29.  Dr. Templin assessed that the plaintiff could never climb, balance, stoop, crouch, kneel, or crawl.  AR 229.

Dr. Templin also opined that the plaintiff suffers from situational depression.  AR 227.  Dr. Templin concluded that the plaintiff "is unable to return to his previous work position.  He is unable to return to any activities requiring prolonged standing, walking, frequent bending, stooping, kneeling, squatting, crouching, lifting, carrying, climbing, or riding in or on vibratory vehicles for any extended distance or time."  AR 226.

**The Plaintiff's Objections to the Report and Recommendation**

The plaintiff objects to the Magistrate Judge's Report on four grounds: (1) the ALJ failed to adequately develop the administrative record regarding the plaintiff's mental impairments; (2) the ALJ did not afford appropriate weight to the

5

opinions of the plaintiff's treating physicians; (3) the ALJ failed to comply with the requirements of Social Security Ruling ("SSR") 00-4p, because he did not ask the VE whether his testimony was consistent with the *Dictionary of Occupational Titles* ("DOT"); and (4) the ALJ erred in finding that the plaintiff can walk without the use of a cane.

Review of the ALJ's decision to deny disability benefits is limited to determining whether substantial evidence exists to support the denial decision and whether the Secretary properly applied applicable legal standards. *Brainard v. Sec'y Heath & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989), *citing Richardson v. Perales*, 402 U.S. 389 (1971). "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401.

### 1. Development of the Record

The plaintiff asserts that he was denied a full and fair hearing, because the ALJ failed to adequately develop the record despite the fact that he was not represented by counsel at the hearing. The plaintiff claims that the medical evidence establishes that he has significant mental impairments, and the VE's testimony in response to a hypothetical question posed by the ALJ indicates that he is unable to engage in sustained gainful activity because of those impairments.

The plaintiff was not represented by counsel during the application process. "When a disability claimant is not represented by counsel at the administrative

hearing, the ALJ has a special duty to ensure that a full and fair administrative record is developed." *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 856 (6th Cir. 1986) (*citing Lashley v. Sec'y of Health & Human Servs.*, 708 F.2d 1048, 1051 (6th Cir. 1983)). If the lack of representation results in unfair or unsupported conclusions or unfairly taints the ALJ's findings, then that duty has not been fulfilled. *Duncan*, 801 F.2d at 856. Merely superficial questioning of inarticulate claimants that leads to inaccurate information is similarly insufficient. *Lashley*, 708 F.2d at 1052.

The ALJ found that the plaintiff's mental limitations are not severe. Although the ALJ acknowledged that Dr. Villa prescribed medication for the plaintiff's depression and anxiety, he also noted that Dr. Villa is not a mental health specialist and that the plaintiff's symptoms were not so severe that he needed to be referred for mental health counseling. AR 25. Furthermore, Dr. Lea J. Perritt performed a consultative psychiatric review and found that the plaintiff's mental impairments were not severe. AR 189. Dr. Perritt found that the plaintiff suffered from only mild limitations in his ability to perform activities of daily life, function socially, and maintain concentration. AR 199.

Although the record supports the plaintiff's allegation that he experiences depression and anxiety, the record does not support the proposition that his mental impairments are severe. *See Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (mere diagnosis says nothing about severity). Despite the lack of testimony from the plaintiff as to his mental impairments, the record contains ample evidence to

support the ALJ's conclusion that they are not severe.

### 2. Treating Physician Rule

The plaintiff contends that Dr. Ellington's consultative report does not undermine the reports from and opinions of his treating physicians, Drs. Villa, Nazir, and Templin, which he claims support a finding that he is disabled. The opinion of a treating physician is entitled to great weight and, if uncontradicted on the record, complete deference. *Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 528 (6th Cir. 1992). However, an ALJ is not bound by a treating physician's conclusory assessments or opinions that are not supported by objective medical criteria or documentation. *Id.*

Dr. Villa examined the plaintiff on several occasions but never rendered an opinion as to the plaintiff's ability to return to work. Therefore, there is no opinion from Dr. Villa to which the treating physician rule could apply.

Dr. Nazir concluded that the plaintiff *may* not be able to engage in gainful employment. First, Dr. Nazir's assessment is equivocal; it states that the plaintiff's physical impairments *may* preclude him from engaging in gainful employment. Second, Dr. Nazir's opinion is not supported by any objective medical findings. Third, Dr. Nazir took over for Dr. Villa, evidently sometime after January 13, 2003, and therefore the justifications for the treating physician rule – opportunity to examine the claimant and familiarity with the claimant's condition – are not served by affording complete deference to Dr. Nazir's conclusion. *See Walker v. Sec'y of Health & Human Servs.*, 980 F.2d 1066, 1070 (6th Cir. 1992) (explaining treating

physician rule).

Dr. Templin did not examine the plaintiff until after the ALJ rendered his opinion, and the ALJ therefore did not have an opportunity to review Dr. Templin's report.  However, there is no reason to remand this case to the ALJ in light of Dr. Templin's assessment, because Dr. Templin did not reach the conclusion that the plaintiff is unable to perform work-related activities.  Rather, Dr. Templin opined that the plaintiff cannot perform his past work and would have physical restrictions in any occupation.

The court finds that none of the plaintiff's purported treating physicians determined that he is unable to work.  However, to the extent that their reports support such a conclusion, they are not supported by objective medical evidence and are contradicted by evidence on the record, including Dr. Ellington's consultative report, which noted mostly mild restrictions on the plaintiff's physical capabilities.

### 3. SSR 00-4p

When an ALJ elicits testimony from a VE regarding occupational requirements, the ALJ has an affirmative responsibility to ask the VE whether the evidence he has presented conflicts with information provided in the DOT.  SSR 00-4p.  The ALJ failed to ask Dr. Crystal whether his testimony was consistent with the DOT.  Although the plaintiff intimates that the VE's testimony could be "a complete fabrication," the plaintiff fails to indicate and the court does not find any conflict between Dr. Crystal's opinion and the DOT.

An error is harmless where it has no bearing on the procedure used or the substance of the ultimate decision. *U.S. Steel Corp. v. U.S. Envtl. Prot. Agency*, 595 F.2d 207, 215 (5th Cir. 1979). The Sixth Circuit has found that the harmless error rule is applicable in the social security context. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001) (failure to explain weight given to medical history summary written by treating physician not reversible error where decision supported by substantial evidence). Specifically, the failure to strictly abide by the guidelines in SSR 00-4p does not necessitate reversal where the ALJ's opinion is nonetheless supported by substantial evidence and the error was harmless. *Jackson v. Barnhart*, 120 Fed. Appx. 904, 906 (3d Cir. 2005). The plaintiff cites *Young v. Comm'r of Soc. Sec.*, 351 F. Supp. 2d 644 (E.D. Mich. 2004), in support of his argument that the ALJ's error was not harmless. In *Young*, remand was appropriate because there was actually a conflict between the VE's opinion and the information contained in the DOT, and the ALJ failed to perceive that conflict. 351 F. Supp. 2d at 652. Conversely, there is no such conflict in this case.

Dr. Crystal's testimony does not conflict with the DOT, and the ALJ's determination is supported by substantial evidence. Therefore, the ALJ's failure to ask Dr. Crystal whether the evidence he presented was consistent with the information contained in the DOT was harmless error.

  4. **The plaintiff's use of a cane**

The plaintiff argues that although Dr. Ellington concluded that the plaintiff could walk without assistance, his report nonetheless supports the contention that

he cannot. Dr. Ellington confirmed that the plaintiff experienced symptoms including pain, swelling, decreased range of motion, and decreased strength, but he also observed that the plaintiff moved about the examination room without difficulty, could get on and off the examination table without trouble, and was able to dress and undress himself. Dr. Ellington's opinions as to the plaintiff's physical capabilities —for example, he can walk for 6 hours per day; his ability to balance is unrestricted; and his ability to stand, climb, kneel, crouch, crawl, and stoop are only mildly restricted —also support the conclusion that he does not need a cane to walk. Therefore, the ALJ's opinion that the plaintiff does not require an assistive device for ambulation is supported by substantial evidence. Accordingly,

**IT IS ORDERED** that the Report and Recommendation is **ADOPTED** as the opinion of the court and the defendant's motion for summary judgment (DE 11) is **GRANTED**.

**IT IS FURTHER ORDERED** that the plaintiff's motion for summary judgment (DE 8) is **DENIED**.

Signed on January 30, 2006



JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY